Good morning. May I please depart? Lomita Nirez, appearing on behalf of Petitioner Juan Reyes-Perez. Now the central issue in this case is that the proceedings should have been terminated because the evidence submitted by the Department of Homeland Security specifically exhibits 23789 and the testimony derived from the documents to establish that the respondent attempted to smuggle an unlawful alien into the United States was erroneously introduced because it contained hearsay, false and inaccurate information, was obtained through the use of coercion, false promises to the petitioner and was in violation of petitioner's due process rights. Now the immigration judge found petitioner's testimony not credible. A review of the entire record reveals that the judge's adverse credibility finding is not supported by the substantial evidence. The Ninth Circuit reviews the factual findings under the deferential substantial evidence standard, treating them as conclusive unless any reasonable adjudicator would be compelled to conclude the contrary. Now petitioner's testimony may have been confusing as the petitioner was confused. Well, if we're going to start with the petitioner's testimony, we're really then talking about whether he was adversely credible or not, correct? Correct. Now you're not suggesting, are you, that any of this evidence that you don't think should have been admitted couldn't have been used in impeachment, are you? Well, in essence – No, answer my question. Do you believe that any of these forms or evidence could not have been used for impeachment? The Exhibit No. 9, which was the sworn testimony, the taped sworn testimony, was the document that was used for impeachment purposes, and that's what was used for it. Yes, I believe – Well, in fact, in normal hearings, even if a confession is taken without Miranda rights being given or it is not given the way it ought to be given, they can still use it as impeachment, you understand. I understand. And we're in an immigration proceeding now. So they were using documents that you claim were taken coercively, but nonetheless, for impeachment purposes, they could have been used, couldn't they? Well, not if the respondent was found credible. Now, just a minute, now just a minute. We're not talking about whether he's found credible. We're talking your client was giving testimony, and they were using these documents to impeach him. Now, these documents may not have been admittable just in regular proceeding, but at least for impeachment, they can be used, can't they? I don't know a case that says they can't be used for impeachment. Well, they can in order to try to clarify why they did this. They can, in fact, be used to impeach his testimony, correct? Yes. All right. So if those documents were used and impeached his testimony, or he said, I don't know at least nine times or so, or I'm confused or whatever, and the IJ didn't believe him, even confronting him with the documents and confronting him with the difference, then substantial evidence would be pretty strong that the adverse credibility determination was fine. Yes, but his testimony was that the information submitted in these documents were obtained through coercion. Well, I understand what his testimony is, but as for impeachment, that's really not a good objection. What you're really talking about is whether it can be used by the government in its opening case, correct? Correct. Because if it's used by the government in the opening case and it's coerced, then it should not be used, correct? That's right. Now, in my reading of the record, the IJ said, even assuming the respondent's inconsistent testimony could amount to some type of coercion, the evidence showing that Officer Leganor observed that a respondent did at the time of the primary inspection is sufficient to establish the elements of the smuggling charge in this case. And then he goes down to what Officer Leganor had suggested. So this is an alternative finding. In other words, the alternative finding by the IJ that what Officer Leganor observed, which has not been challenged by you nor by your client, would nonetheless find that he, that the government had sustained their burden to suggest that he should not be admittable. The information that Officer Leganor took was a statement when he had just a few seconds of contact with the respondent. Correct. And the evidence, in my opinion, would not have met the clear and convincing standard to prove that he was admissible. Well, but just a minute. Your opinion isn't important. What I'm suggesting is I've got a substantial evidence standard, okay? And I have a substantial evidence standard where Officer Leganor, if that's the way you say it, I didn't say it. I don't know. I said it, Leganor, but I'll go with your idea. If, in fact, I can find that that is substantial evidence of the elements, then haven't I got to affirm nonetheless? No, because the information is not sufficient to show that he's admissible. Why isn't it sufficient? It says here, the officers, the respondents never offered in any different versions than he'd given of the events. These are what Officer Leganor said. Whether today in his testimony is for any explanation as to why this minor child who was sleeping in his car that he is driving when he is applying for admission to the United States is presented as his daughter with his daughter's birth certificate, which he happened to have and gave to the officers at the time, even though his daughter, who is also a minor, was not there at the time, 1 a.m. in the morning, the child in the car, Leslie Bandera, and the respondent's daughter also appear to be in close age. Well, see, that goes back to the issue in this case. It's that basically the judge disregarded what the respondent said because he found them not credible. The respondent testified that. Well, if we find that we don't have to deal with whether he was credible or not because his testimony is supported by substantial evidence on credibility, then we're left with simply what does the government have here? And I can understand your objection to coercive statements being used, though the I.J. made a determination on that. But I'm just saying supposing I don't even go there, supposing I look at an alternative disposition by the I.J., which was we're not going to look at any of those statements. This is Officer Leganor before we had any chance of coercion, before even coercion is challenged. Here's what he said, and he testified, and he says there's a problem. But the petitioner's testimony is not consistent with what Officer Leganor said. But a petitioner is incredible if, in fact, you can use the documents to impeach, and that's all they've done with them is impeach, then at that point your argument about whether it's coercive or not has no basis because we're only in impeachment. Now, let's go back to the other side. Now we have Leganor's testimony, and he testifies, and he also has an affidavit, and it shows what has to be shown by substantial evidence. Why is the case not over? Because Officer Leganor was not he didn't remember what happened. He didn't have an independent recollection. He went by what he had read right before he testified. And even during his testimony, he was confused. When the judge questioned him, Officer Leganor basically was going by what he had written on his testimony. Later on, when he was crossed, because Officer Leganor's testimony was that he was. But the judge has a right to look at what Officer Leganor says, has a right to evaluate it based on his, what he says in the testimony, what he says in cross. And if he determines he's going to believe him, then the substantial evidence review, which is very deferential, would cause me to say this case is over, wouldn't it? But even Officer Leganor's own testimony was inconsistent. When he testified. But the I.J. didn't find it inconsistent. But there wasn't sufficient documents there to show that the Respondent was trying to bring somebody in here undocumented by what Officer Leganor said. So I don't think that even if we were only to admit his information or his information, that it would be sufficient to show that he was the client, that the Petitioner was inadmissible. He basically said this is what my statement said. And then when he was crossed, then he asked him, okay, there was, who was there? He said he remembered the driver, the little girl. And then he was asked, well, what about the two other passengers? On cross, he says, I don't remember the two other passengers. When he had already testified that the two other passengers had handed him over a U.S. passport and a card for the tourist visa card. So he really wasn't clear on what had happened. And Petitioner had testified that he, at the time he was stopped, he brought out the documents from the glove compartment, everything he could find, and gave it to the Officer. And in that, in those pile of documents, there was included the birth certificate of his own daughter. Okay. I understand your argument. Suppose we agree with you that the first statement was coerced and in a threatening manner, contrary to our decision in the case, Bong Young Choi, would we have, and we were to decide that the immigration judge should have excluded it, would we be required to remand this case? I think that in this case, you can terminate, because most of the documents But terminate, you mean just outright grant the petition? Yes, yes, to grant the petition, because most of the information relied on this was by the declarations that was taken from the Respondent in a coercive manner, which most of the, the rest of the case was determined on the G-166 that Officer So you're saying that all of the subsequent documents flow from the, if we determined it to be coerced, from the coerced statement. So all of that would be excluded? Yes, because even when Officer, again, Bronnell testified, the I-213 has most of the basis that was given to him by Officer Rodriguez, and he claimed that his line of question was based on what Officer Rodriguez had given him. Officer Rodriguez didn't testify. Did Ligonier testify? Ligonier testified and Bronnell testified. Bronnell testified. Officer Rodriguez was the one that was out there to I hear Judge Smith saying that Officer Ligonier's testimony was sufficient to prove that there was alien smuggling in this case. Okay, well, in our position, I don't think that there was sufficient evidence from, Officer Ligonier was the first officer that stopped. He's the one at the port of entry. He took a few seconds to talk to the client. Basically, what's your status and where are you going? And at that point, the petitioner claimed that he pulled out all the documents he found in the gun compartment and gave them to him. Officer Ligonier said that he asked for each document individually, but he doesn't remember. He was just going by what was written in that one paragraph he wrote, which was, I believe, was just a statement. Which was never challenged, right? Which was, yes. Officer Ligonier said, I asked a question. Officer, did you ask first for the child's documents or try to wake her up? Answer, I asked for, if there is a document for that child, because who is the child? And I was handed a birth certificate for the child. Why isn't that sufficient to make out the, pardon me, do you want to interrupt some more? Why isn't that sufficient to establish that the child, who was an illegal entrant, was attempted to be passed through the port of entry by the use of a fraudulent birth certificate? Fraudulent in the sense that it was not hers. And the automobile was Mr. Reyes. And he was there. And he handed the birth certificate to the immigration officer. Isn't that sufficient evidence to make out the charge? Well, Officer Ligonier testified that he had no independent recollection of what had happened. No, no, no, no, no. I just read you what he testified. I understand that. But he's saying that by what he had read on his documents. Well, he has recollection, past recollection, recorded because he prepared the document. Next. What's your next part? Well, then, that when he goes into cross, when the attorney cross-examined him, he wasn't as clear on what he had testified. He wasn't as clear on cross-examination. The I.J. observed that. And so what? There's enough substantial evidence to sustain the charge just in the paragraph which I read you. Is there not? What element is missing? Well, it does matter because in this case, I don't believe that what Officer Ligonier wrote testified in his declaration. I'm not telling you. I'm not reading to you what he testified in his declaration. I'm reading what he testified under oath at the hearing. I understand that. So if we do take that by face value and we accept that, I don't think that that's clear and convincing evidence to show that he was inadmissible. I think that there should be more evidence because Respondent testified that Respondent testified that he handed Officer Ligonier all the documents brought up from the glove compartment, which Officer Ligonier did not wrote down. That's another version. Pardon me? That's another version. But he says he was handed the certificate by your client. I understand that. But see, that goes to the crux of the case, is that since the judge found the Petitioner not credible, he disregarded the full testimony that he gave, including the testimony that he gave when he approached the port of entry. I know you're over time, but I have one other question that I think is pretty important. Have you read the Gonzaga-Ortega case? It was just argued and submitted in July and filed in September of this year. Gonzaga-Ortega? Yes, it's Gonzaga-Ortega v. Holder, 694 Fed 3rd 1069. Have you read that? The only reason I ask you if I read that is Gonzaga-Ortega was by our court, and they were talking about a coercion, an allegation of coercion, and they have some similar allegations to what you are making. But if you read their statement in the record, which I think I kind of have to follow since it's been issued in September, they concentrate on four different things and determining on whether it was coerced. The first thing they say were they treated fine, and they find that they were treated fine. Second was, was the statement voluntary? And in this particular instance, the statement was voluntary. Nobody's arguing about that. The third thing they concentrate on is, was there any physical abuse? And there's no physical abuse here, no physical abuse there. The last one they concentrate on was that there was a brief period for being held. And in that case, they said a brief period was 28 hours before questioning. And in our case, it's nine. And they said then based on all of this, there's no coercion, that there's substantial evidence to sustain the IJ's determination that there was no coercion and the BIA's. Why is that not a case dang straight on point with our case? Have you read that case? Do you have that? I believe I have. Do you have a copy of it? Not with me, no. Okay. Did the government cite to it? Pardon me? Did the government cite to it? I don't know if the government cited to it. But I believe in this case, we did touch regarding these points. He wasn't treated nicely. You know, he was humiliated. Well, I thought he said he was treated. He said he was treated nicely only at the very end by Officer Bronwell. Up into the period from the time that he was arrested at 1 o'clock in the morning to the time at 10 o'clock when he saw Officer Bronwell, he was harassed, humiliated. Doesn't he testify that Officer Rodriguez was really aggressive and yelling at him and threatening him? Yes, he does. I think what you ought to do is listen to what Judge Wardlaw said, because if you haven't really read the case and read the facts in the case, you may want to read it before you try to distinguish, because you're going to find that there are facts in there that are very similar to what your client is even arguing. So I think maybe Judge Wardlaw has a point. You maybe ought to think about that before you answer, because I don't want you to say something that you're going to not say what you need to. You really shouldn't be arguing about a case that you haven't read and that you don't have a friend. You might ask if it's – if we would allow you to submit a letter brief about that case if you don't have a copy of it, following the argument. I mean, I'm not trying to trick you with that. If you haven't read it, I don't want you to say something that won't help your client. Well, I read a lot for this case, and I do remember a case, you know, talking about this, especially after you had said that the 28 hours was a short hour compared to our client. Well, if you want to say something, that's fine. I'm just trying to help you. I'm not trying to trick you. Okay. Well, then I will reserve the right to write a letter brief. Why don't you just ask if you could submit something afterwards discussing that case? You have to ask for permission to do that. I'd like the permission to do that. Okay. Okay. Yes, it's fine. Okay. Why don't we hear from the government? You're 11 minutes over your time. I realize a lot of that was taken up with questioning, so I'll give you a minute in rebuttal. Okay, thank you. May it please the Court, my name is Nicole Nardone, attorney for the respondent of the United States. As an initial matter, just in response to the petitioner's testimony, I'd just like to point out that it's the government's position that the report of Officer Ligonard does support the smuggling charge independently of any of the allegations of coercion that have been made in this case. So my question is, if there was coercion and if that statement should have been excluded, the BIA didn't adopt that alternative holding, did it, of the IJ? The alternative holding regarding the officer? Even if the statement was excluded, there was sufficient other? Yes, I believe the BIA did discuss the fact that there was insufficient evidence, anyway, that had been raised to in any way call into doubt the reliability of the documents. And that even if we didn't – Where does he say that? I'll take a look here. Because it seems like the only pure testimony is that of Ligonard that's not subsequently contained. Yes. I mean, I'm going to – I can address that in my argument if that's okay. I was just going to sort of discuss the evidence that's before the Court and the allegations that have been made. Okay. All right. The question before this Court is whether the agency properly found the petitioner knew that his sister-in-law – I'm sorry, that his sister-in-law approached him crying, saying that she was concerned and she missed her daughter who was in Mexico. The petitioner stated that he knew his sister-in-law's child did not have legal papers. He stated that he felt bad for his sister and that he devised a plan to use his own daughter's birth certificate to bring her to the United States. He stated he went to Tijuana with the express purpose of picking her up, picked her up, and directly returned because he had to return to work the next day. The petitioner also stated – was driving the car when he approached the border and presented to the border officer his daughter's birth certificate for the child that was in Mexico. Are you reading from the BIA opinion? I'm just setting forth for the Court the facts that are in the record. I think the question that Judge Wardlaw asked you was to point out where in the BIA opinion that BIA adopted an alternative to the use of plaintiffs' allegedly coerced statements. Can you do that? I'm sorry. Can you repeat the question, Your Honor? I just want to make sure I understand this. Yes. I'll rephrase the question.  statements. Right. Did the BIA determine that there was independent evidence from Officer Leganor or Officer Rodriguez or anybody else that establishes the elements of the removable offense? I know there is discussion. Let me see if I can find it. Let's see here. Because, you see, we review what the BIA determined. I understand that, Your Honor. On the second page of the BIA's decision, they do discuss the fact that Officer Rodriguez was not produced. Could you point to me the page of the BIA decision to which you were referring? Second page. Second page. Yes. All right. Which paragraph? The second paragraph discusses that the government did not produce Officer Rodriguez. Uh-huh. And then it says, however, unlike Hernandez, there was substantial additional evidence submitted other than the report written by Officer Rodriguez, as well to doubt the respondent's allegations. And then I know there's reference in here to the report of Officer Leganor. Let me find it. The question then becomes whether the evidence which was submitted by the other counsel, all they're talking about in that paragraph is the foundation for admitting the documents. I'm asking you, I heard from Judge Smith. I heard Judge Smith say NIJ had an alternative basis in which it may express, and I'm asking you, did the BIA adopt it? And if so, where? Specifically, I don't see that they specifically said those words. My question is, if I were to decide that Reyes' assertion that Officer Rodriguez threatened him that he would be punished if he did not admit the charges was coercive and should have resulted in the statement being excluded, would I have to rename this case to the BIA? That's the question I asked your co-counsel, too. Well, I believe that the board, because the board references both the testimony of Doesn't the board have to make a specific alternative holding for it to be? The board often does in a sort of conclusory fashion adopt findings by the immigration judge and often does that with credibility findings in another context. Excuse me, counsel. I am asking you, what did the BIA do in this case? I know what the BIA often does and generally does. We see a lot of these cases, but what did it do in this case and where did it do it? Well, here, to me, in my opinion, this second paragraph on the second page says, the question becomes whether the evidence which was submitted for DHS provided that the two other authors was probative and fundamentally fair, and those two other authors are Linganore and Brownell. Okay, but they're not making an alternative holding. They're just saying that evidence could come in and they could rely on that evidence. Well, it's the government's position that that essentially is an adoption of the immigration judge's finding. But I have an alternative argument. Where is the immigration judge's alternative finding? Where did the immigration judge specifically find that? You're saying with regard to Linganore's statement? I'm saying if we exclude the statement, where is the finding that we can rely exclusively on Linganore's testimony to find that there was substantial evidence supported the conclusion of alien smuggling, which is the grounds for deportation in this case. Are you suggesting in the IJ's opinion or the BIA? Okay. So I think we've established that it's probably not in the BIA. Okay. So now I'm asking where it is in the IJ. Okay. Thank you. I do have it. I do have it marked. I think you should let her answer. I'm sure you have it. I have it. I've heard you kind of prompt a couple of times in the past. I'm letting her take her time. She's representing the government here, and she should have these answers. I do have it. I do have it. I just need to find it in here because it's a long decision. If she can't find it, you can show me later. Well, that's right. It seems to me, Counselor, that my colleagues' questions are dead on. I kept thinking counsel would give me the same response that they're now asking you about. Where did the BIA do this? And I underlined a couple of lines that I thought might do it, but I'm not really sure that they really do it, so I'm not sure I can really rely on that at all, which seems to me to indicate that in our particular case, we've got to determine whether the IJ is correct that there are coercive statements, haven't we? Yes. I mean, it does then obviously bring in the next documents because then the statements that were recorded by Officer Rodriguez, against whom the petitioner made the allegations of coercion, come into play. Okay. And if, in fact, that's the way it is, isn't the IJ's and the BIA's determination of adverse credibility important in making that decision about whether the statements were coercive or not? Yes. It's our position that that determination is important. But also, even if the court were not to find substantial evidence that supports the credibility determination, even just to try to look at the evidence itself is so inconsistent. There's simply the petitioner's failed to raise a consistent story as to what exactly happened that was coercive. Well, I think that's where I come down to the same question that Judge Wardlaw just asked. If there's a faulty credibility determination, I would still need to remand for further proceedings because at that point the IJ would need to take his testimony as true, wouldn't I, and then make the determination. Because if, in fact, there's not a faulty credibility determination, well, then we're left with, okay, he was incredible, so we have to really determine whether it was coercive. But if, in fact, we find there's a faulty credibility determination, then at that point I have to take his testimony as true, that he was coerced. So at that point I'd really have to remand for the IJ to think about that as a true, as true testimony, wouldn't I? The way that the immigration judge seemed to analyze the case is that he said that essentially there was he first discussed the fact that the evidence was simply not reliable in the sense that it was so inconsistent. He doesn't necessarily find the petitioner to be lacking in credibility until the end of his determination. And it's the fact that he just told so many different stories that the immigration judge didn't even know what to believe. How he could have taken for true the fact that he, at one point, claimed that his statements were completely voluntary and that he was Well, he doesn't need to take it as true if he makes an adverse credibility determination. But if he doesn't make such a determination, then he has to hold it as true even if he finds it inconsistent, doesn't he? I'm sorry. Well, all I'm saying is that the normal is if somebody finds the petitioner credible, then we believe everything he says. If we find them incredible, which they did here, then we don't believe anything the petitioner says. So they challenge the adverse credibility determination. And all I'm saying is if we believe there was a faulty adverse credibility determination, don't I have to remand to allow the IJ then to determine what to do on the government's evidence if given the petitioner is truly testifying? Well, the immigration judge and the board also discussed the fact that any of the allegations that were made simply didn't rise to the level of egregious that they would warrant suppression under, like, a Lopez Mendoza standard, for example. They discussed the fact that even if we look at the, you know, in the totality of the circumstances, all of the allegations that have been made, and the government's position also that this is supported, that these don't even rise to the level of Fifth Amendment violation under the Ninth Circuit's precedent, which is to say that there's no evidence that there was undue or undue coercion to the extent that the petitioner's will was actually overborne during any of his testimony. Counsel, it's clear in the record that there was a videotaped statement, but as part of the administrative record in this case, unlike the other cases that we've heard this week, there was no DVD provided by the government. Okay. Well, so where is it? I would like to see that so that I can make... I can certainly have it provided for you. All right. I would like to see that videotape. I tend to watch those to see... We'll do that right away. Thank you. Here, I'm having a little bit of trouble with the government's position. Let's see if I can understand this. I see this as a two-stage inquiry. The first stage is whether the statements that were given were coerced. Until you decide that issue, you cannot use the inconsistencies in the statement to make a finding that he has adverse credibility, right? Now, on the issue of whether the statements were coerced, Mr. Reyes says they were coerced. What evidence was there in the record to rebut his charge as to coercion? Did Officer Rodriguez, who was the prime accused culprit by Mr. Reyes, was not indeed at the hearing, correct? Correct. Officer Rodriguez was not produced. I will note that the... So let me ask you this. Did the immigration judge determine the coercion question by inconsistencies which were in the statements given by Mr. Reyes? If so, I think that he might have used them incorrectly on that threshold issue. I believe the immigration judge discussed a couple of things. He discussed the fact that there was evidence that the statement that was given, the taped statement with Brunel, which happened several hours after any of the alleged interview with Rodriguez, that there was no indication that that statement was in any way involuntary. There was no indication that the petitioner was pressured or uncomfortable during that interview. So, in other words, you made a factual finding that whatever Rodriguez or Ligonier had said, and Ligonier was very brief, whatever Rodriguez had said, the effect of that had been spent, and the statement to Brunel, which specifically asked whether this was voluntary and yes, was sufficient evidence to find that the statement was indeed voluntary and then could be used. Correct. There had not been any indication that there was undue influence from Brunel. In other words, the statement itself was not used as impeaching of Mr. Reyes on the coercion question. Correct. Thank you. Is there any other further questions I can conclude? Yes. I don't think so, actually. Okay. Thank you. Thank you, Your Honors. Because the petitioner failed to present credible evidence challenging the government's documents, the agency properly denied the motion to suppress, and the Court should Thank you. Do you have anything else to say? You have a minute for rebuttal. No, Your Honor. Okay. Thank you very much, Counsel. Reyes-Perez v. Holder, submitted.
judges: Wardlaw, Bea, Smith